## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| MELISSA HIRTHE, TERESA BUSHBERGER, and ANNE O'BOYLE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) Case No.: 17-cv-1481 |
| | ) **CLASS ACTION COMPLAINT** |
| Plaintiffs, | ) ) |
| v. | ) **Jury Trial Demanded** |
| | ) |
| ALLTRAN FINANCIAL, LP, | ) ) |
| | ) |
| Defendant. | ) |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION

2.     The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Melissa Hirthe is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff Teresa Bushberger is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Plaintiff Anne O'Boyle is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6.      Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

7.      Plaintiffs are also each a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from consumer transaction that included agreements to defer payment, namely a consumer credit card.

8.      Defendant Alltran Financial, LP ("Alltran") is a foreign limited partnership with its principal offices located at 5800 North Course Drive, Houston, TX 77072.

9.      Alltran is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10.     Alltran is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Alltran is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Hirthe Letter*

11.     On or about October 31, 2016, Alltran mailed a debt collection letter to Plaintiff Hirthe regarding an alleged debt owed to: "Citibank, N.A." ("Citibank") and "The Home Depot" ("Home Depot"). A copy of this letter is attached to this Complaint as Exhibit A.

12.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a personal, non-business, Home Depot store-branded credit card, used exclusively for personal, family, or household purposes, including purchases of household goods at Home Depot stores.

2

13.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14.     Upon information and belief, Exhibit A is a form debt collection letter used by Alltran to attempt to collect alleged debts.

15.     Exhibit A contains the following text:

> Total Balance as of October 31, 2016: $5,170.09
> Minimum Payment Due as of October 31, 2016: $841.00

16.     After listing the "Total Balance" and "Minimum Payment Due," Exhibit A includes the following instruction: "Please remit the Minimum Payment Due, payable to Citibank, N.A., in the enclosed envelope."

17.      Exhibit A contains no further indication that Alltran or any creditor sought to collect the total balance of the account at the time the collection letter was sent.

18.     On or about November 11, 2016, Home Depot mailed a billing statement to Plaintiff Hirthe regarding the same alleged debt owed to Citibank and Home Depot. A copy of this billing statement is attached to this Complaint as Exhibit B.

19.     Exhibit B lists a "Minimum Payment Due" of $1,038.00 and a "Payment Due Date" of December 9, 2016.

20.     On or about December 5, 2016, Alltran mailed another debt collection letter to Plaintiff Hirthe regarding the alleged debt owed to Citibank and Home Depot. A copy of this billing statement is attached to this Complaint as Exhibit C.

21.     Upon information and belief, Exhibit C is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

22.     Upon information and belief, Exhibit C is another form debt collection letter used by Alltran to attempt to collect alleged debts.

Case 2:17-cv-01481-DEJ     Filed 10/27/17     Page 3 of 22     Document 1

23.     Despite being sent before the due date provided by Exhibit B, Exhibit C contains no reference to any "Minimum Payment Due."

24.     Instead, Exhibit C contains the following settlement offer:

> Our client, the above named creditor, has agreed to accept $2,656.49 as a settlement for monies owing on your account. Payment must be received by this office within 15 days of the postmark of this letter to accept this offer. Please make your payment payable to Citibank, N.A.. We are not obligated to renew this offer.

25.     Thus, Exhibit C states that "Payment must be received by this office within 15 days of the postmark of this letter to accept this offer."

26.     On or about December 13, 2016, Home Depot mailed another billing statement to Plaintiff Hirthe regarding the alleged debt owed to Citibank and Home Depot. A copy of this billing statement is attached to this Complaint as Exhibit D.

27.     Despite Alltran's apparent attempt to settle the total balance of the account, Exhibit D again lists a "Minimum Payment Due," this time for $1,251.00, and a "Payment Due Date" of January 9, 2017.

28.     On or about December 5, 2016, Alltran mailed yet another debt collection letter to Plaintiff Hirthe regarding the alleged debt owed to Citibank and Home Depot. A copy of this billing statement is attached to this Complaint as Exhibit E.

29.     Upon information and belief, Exhibit E is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

30.     Upon information and belief, Exhibit E is another form debt collection letter used by Alltran to attempt to collect alleged debts.

31.     Exhibit E contains the following text:

Total Balance as of December 29, 2016: $5,470.50
Minimum Payment Due as of December 29, 2016: $1,251.00

4

32.     Thus, despite apparently having previously attempted to settle the total balance, Alltran, by virtue of Exhibit E, reverted to seeking only the minimum payment due on Plaintiff Hirthe's alleged debt owed to Home Depot and Citibank.

33.     As a result of Exhibits A-E, Plaintiff Hirthe was uncertain. as to whether Alltran and the creditors of the alleged debt were seeking to collect the entire balance of the debt or merely the minimum payment due.

34.     Plaintiff Hirthe was confused by Exhibit A-E.

35.     The unsophisticated consumer would be confused by Exhibit A-E.

36.     Plaintiff Hirthe had to spend time and money investigating Exhibit A-E, and the consequences of any potential responses to Exhibit A-E.

37.     Plaintiff Hirthe had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A-E.

### *Bushberger Letters*

38.     On or about February 7, 2017, Alltran mailed a debt collection letter to Plaintiff Bushberger regarding an alleged debt, allegedly owed to "CAPITAL ONE N.A." ("Capital One") and originally owed to "Chase Bank USA N.A." A copy of this letter is attached to this complaint as Exhibit F.

39.     Upon information and belief, the alleged debt that Alltran was attempting to collect from Bushberger was a personal credit card account, used only for personal, family, or household purposes.

40.     Upon information and belief, Exhibit F is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

5

41. Upon information and belief, Exhibit F is a form debt collection letter used by Alltran to attempt to collect alleged debts.

42. Upon information and belief, Exhibit F is the first written communication that Alltran sent to Bushberger regarding the alleged debt to which Exhibit F refers.

43. Exhibit F lists the "Amount Owed" $1,384.69.

44. Exhibit F contains the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

45. Exhibit F also contains the following settlement offer:

| Option #1 | Option #2 | Option #3 |
|---|---|---|
| Settle your account now for a lump-sum payment of $830.81. That is a savings of $553.88 on your outstanding balance. | Extend your time and pay the balance in 6 monthly payments of $230.78 over 6 months. | Call and talk to a representative today about options to repay the outstanding balance. |

*Note: Because of this aggressive savings offer, we request you secure the entire settlement amount with postdated checks, (except where prohibited by law), checks by phone, or debit/credit card.*

46. The purported settlement offer listed under caption "Option #2" in Exhibit F offers virtually no discount to the consumer. A consumer who made all six payments would have tendered $1,384.68 to settle the account, just one penny shy of the entire balance.

47. By placing it next to another option offering substantial savings, while not disclosing the total amount necessary to effectuate the settlement and describing it as an "aggressive savings offer," the purported settlement offer listed under caption "Option #2" is meant to deceive the unsophisticated consumer into believing they may save money by accepting such offer.

48. Furthermore, insofar as a consumer may understand the purported settlement offer listed under caption "Option #2" is meant to pay the entire balance of the account, the offer is nonetheless misleading because the offer is for one cent less than the entire balance.

6

49. Plaintiff Bushberger was confused by Exhibit F.

50. The unsophisticated consumer would be confused by Exhibit F.

51. Plaintiff Bushberger had to spend time and money investigating Exhibit F, and the consequences of any potential responses to Exhibit F.

52. Plaintiff Bushberger had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit F.

### *O'Boyle Letters*

53. On or about December 13, 2016, Department Stores National Bank ("DSNB") mailed Plaintiff O'Boyle an account statement, regarding an alleged debt owed to DSNB for Plaintiff's alleged "Macy's American Express Account," with an account number ending in 2632. A copy of this account statement is attached to this complaint as Exhibit G.

54. Exhibit G contains the following:

| Summary of Account Activity | |
|---|---|
| Previous Balance | $201.07 |
| Payments | -$0.00 |
| Other Credits | -$0.00 |
| Purchases/Other Debits | +$0.00 |
| Fees Charged | +$37.00 |
| Interest Charged | +$4.66 |
| ⊖ New Balance | $242.73 |
| Past Due Amount | $143.20 |

| Credit Limit | $0.00 |
|---|---|
| Available Credit | $0.00 |
| Statement Closing Date | 12/13/2016 |
| Next Statement Closing Date | 01/13/2017 |
| Days in Billing Cycle | 32 |

| Payment Information | |
|---|---|
| New Balance | $242.73 |
| Minimum Payment Due | $187.86 |
| Payment Due Date | January 9, 2017 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $37.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 4 months | $250 |

If you would like information about credit counseling services, call 1-877-337-8188.

55. Exhibit G also contains the following:

**Fees**

| Transaction Date | Description | Amount |
|---|---|---|
| Dec 09 | LATE FEE | $37.00 |
| | TOTAL FEES FOR THIS PERIOD | $37.00 |

**Interest Charged**

| Transaction Date | Description | Amount |
|---|---|---|
| Dec 13 | INTEREST CHARGE ON PURCHASES | $4.66 |
| | TOTAL INTEREST FOR THIS PERIOD | $4.66 |

7

56.     Exhibit G states that, as of the statement's closing date, December 13, 2016, Plaintiff's account had a "New Balance" of $242.73, with a "Minimum Payment Due" of $187.86 and a "Payment Due Date" of January 9, 2017.

57.     Exhibit G also states that Plaintiff O'Boyle's account incurred a "Late Fee" of $37.00 on December 9, 2016 and "Interest Charge" of $4.66 on December 13, 2016.

58.     On or about January 13, 2017, DSNB mailed Plaintiff O'Boyle an account statement, regarding an alleged debt owed to DSNB for Plaintiff's alleged "Macy's American Express Account," with an account number ending in 2632.  A copy of this account statement is attached to this complaint as Exhibit H.

59.     Exhibit H contains the following:

| Summary of Account Activity | |
| --- | --- |
| Previous Balance | $242.73 |
| Payments | -$0.00 |
| Other Credits | -$0.00 |
| Purchases/Other Debits | +$0.00 |
| Fees Charged | +$37.00 |
| Interest Charged | +$5.49 |
| ⊖ New Balance | $285.22 |
| Past Due Amount | $187.86 |

| Credit Limit | $0.00 |
| --- | --- |
| Available Credit | $0.00 |
| Statement Closing Date | 01/13/2017 |
| Next Statement Closing Date | 02/10/2017 |
| Days in Billing Cycle | 31 |

**Payment Information**

| | |
| --- | --- |
| **New Balance** | **$285.22** |
| **Minimum Payment Due** | **$233.35** |
| **Payment Due Date** | **February 9, 2017** |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $37.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
| --- | --- | --- |
| Only the minimum payment | 4 months | $293 |

If you would like information about credit counseling services, call 1-877-337-8188.

60.     Exhibit H also contains the following:

**Fees**

| Transaction Date | Description | Amount |
| --- | --- | --- |
| Jan 09 | LATE FEE | $37.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$37.00** |

**Interest Charged**

| Transaction Date | Description | Amount |
| --- | --- | --- |
| Jan 13 | INTEREST CHARGE ON PURCHASES | $5.49 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$5.49** |

61.     Exhibit H states that, as of the statement's closing date, January 13, 2017, Plaintiff's account had a "New Balance" of $285.22, with a "Minimum Payment Due" of $233.35 and a "Payment Due Date" of February 9, 2017.

8

62.     Exhibit H also states that Plaintiff O'Boyle's account incurred a "Late Fee" of $37.00 on January 9, 2017 and "Interest Charge" of $5.49 on January 13, 2017.

63.     On or about January 14, 2017, Alltran mailed a debt collection letter to Plaintiff O'Boyle regarding an alleged debt owed to DSNB. A copy of this letter is attached to this Complaint as Exhibit I.

64.     The alleged debt referenced in Exhibit I was a credit card account, incurred for personal, family, or household purposes, namely purchases of clothing and household goods at department stores, including Macy's.

65.     Upon information and belief, Exhibit I is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

66.     Exhibit I was the first letter Alltran sent to Plaintiff O'Boyle regarding this alleged debt.

67.     Exhibit I states the following:

Date: January 14, 2017
Creditor: Department Store National Bank
Account: XXXXXXXXXXX2632
Alltran ID: ▮▮▮▮4225
Total Balance as of January 14, 2017: $279.73
Minimum Payment Due as of January 14, 2017: $187.86
Telephone: 888-739-0745, ext 4987
Partial Account Number for Your Security

68.     Exhibit I also states the following:

We trust that your intention is to address this overdue debt. If you wish to make payment arrangements, you can call our office at 888-739-0745, Ext. 4987 so we can assist you in resolving this matter. As of the date of this letter you owe the amount stated above. Because your account continues to accrue interest and may accrue late and other charges on all owed balances pursuant to your agreement with your creditor, the Total Balance on the date you pay may be greater. If you pay the Total Balance above, an adjustment may be necessary after we receive your payment. If so, we will contact you. For further information about your balance, please call your account representative.

69.     Exhibit I states: "As of the date of this letter you owe the amount stated above."

70.     Exhibit I states that the "Total Balance as of January 14, 2017" is $279.73 and the "Minimum Payment Due as of January 14, 2017" is $187.86.

9

71. Exhibit I states that Plaintiff O'Boyle's account had a "New Balance" of $285.22 on January 13, 2017 but Exhibit I states that Plaintiff's account had a "Total Balance" of $279.73 on January 14, 2017.

72. Exhibit H states that Plaintiff O'Boyle's account had a Minimum Payment of $233.35 on January 13, 2017 but Exhibit I states that Plaintiff's account had a Minimum Payment of $187.86 on January 14, 2017.

73. Exhibit I, dated January 14, 2017, states the minimum payment due stated in Exhibit G, the account statement sent on or about December 13, 2016, which is considerably less than the minimum payment due stated in Exhibit H, the account statement sent on or about January 13, 2017.

74. Upon information and belief, Exhibit I does not include the Interest Charge of $5.49 in the "Total Balance," even though the interest charge was incurred on January 13, 2017 and Exhibit I asserts that it states the account balance as of January 14, 2017.

75. The unsophisticated consumer would be flabbergasted by the conflicting amounts stated and would be unable to determine the actual account balance and minimum payment due as of January 14, 2017, the date of Exhibit I.

76. Plaintiff O'Boyle was confused by Exhibit I.

77. The unsophisticated consumer would be confused by Exhibit I.

78. Plaintiff O'Boyle had to spend time and money investigating Exhibit I, and the consequences of any potential responses to Exhibit I.

79. Plaintiff O'Boyle had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit I.

10

## THE FAIR DEBT COLLECTION PRACTICES ACT,
## 15 U.S.C. § 1692 ET SEQ.

80.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

81.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

82.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is

11

> remedial in nature, its terms must be construed in liberal fashion if the
> underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

83. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd,* 868 F.2d 566 (3d Cir. 1989).

84. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S.

App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

85. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

86. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

87. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

88. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

89. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

13

90.     15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

91.     15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

92.     The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

93.     While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a

14

letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

94.     Exhibit G misstates the amount of the debt on the date that the letter was sent to the consumer.

95.     Misstatement of Plaintiff's debt is a *per se* violation of 15 U.S.C. § 1692g(a)(1). There is no materiality inquiry required where a debt collector fails to make a disclosure required under § 1692g.  *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 ("for good reason, we have not extended the implicit materiality requirement of § 1692e to reach claims under §1692g(a).").

96.     Moreover, misstatement of Plaintiff's debt is a material false statement (*see Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009)) because it misleads the unsophisticated consumer about the amount of the debt. 15 U.S.C. § 1692e(2)(a).\

## THE WISCONSIN CONSUMER ACT,
## CH. 421-427 WIS. STATS.

97.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

98.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

15

99.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

100.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives."  *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

101.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

102.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]."  Wis. Stat. § 421.106(1).

103.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

104.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

16

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

105.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

106.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

107.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

108.    Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I -- FDCPA

109.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

110.    Count I is brought on behalf of Plaintiff Hirthe.

111.    Exhibit A, sent on or around October 31, 2016, indicates that Alltran was seeking to collect from Plaintiff Hirthe only the minimum payment due on her account with Citibank and Home Depot.

112.    Exhibit C, sent on or around December 5, 2016, then sought to settle the total balance of the same account, with no reference to any minimum payment.

113.    Exhibit E, sent on or around December 29, 2016, reverts back to attempting to collect only the minimum payment due on the same account.

17

114.    By alternating between attempts to collect the minimum payment due and the total balance of the account, Exhibits A, C, and E are misleading as to the actual amount of the debt Alltran sought to collect from Plaintiff as well as the possible consequences of a failure to make payments on those amounts.

115.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10).

## COUNT II -- FDCPA

116.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

117.    Count II is brought on behalf of Plaintiff Bushberger.

118.    Exhibit F provides a purported "settlement offer" under the caption of "Option #2," but that offer is misleading because it offers only a nominal discount on the total amount of the debt.

119.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f.

## COUNT III -- FDCPA

120.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

121.    Count III is brought on behalf of Plaintiff O'Boyle.

122.    Exhibit I misstated both the total balance owed and the minimum payment due as of the date of the letter.

123.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

18

## COUNT V -- WCA

124.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

125.     Count V is brought on behalf of Plaintiff O'Boyle.

126.     <u>Exhibit I</u> misrepresented the amount Plaintiff O'Boyle owed as of the date of its letter.

127.     <u>Exhibit I</u> misrepresented the minimum payment Plaintiff was required to pay as of the date of its letter.

128.     Understating the total amount owed is a form of harassment because, if Plaintiff paid what Alltran stated was the "Total Balance," the remaining balance of the account would continue to accrue interest and Alltran could potentially continue to attempt to collect on the account.

129.     Understating the minimum payment due is a form of harassment because, if Plaintiff paid what Alltran stated was the "Minimum Payment," it would not actually have brought Plaintiff's account current, the remaining balance of the account would continue to accrue interest and late fees, and Alltran would have continued to attempt to collect on the account.

130.     Alltran may not legally attempt to collect amounts less than the minimum payment due, does not do so in its ordinary course of business.

131.     Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

19

## CLASS ALLEGATIONS

132.     Plaintiff brings this action on behalf of a five proposed classes.

133.     Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibits A, C, or E to the complaint in this action, (c) seeking to collect both a minimum payment due as well as settle the total balance of the account, (d) for an alleged debt incurred for personal, family, or household purposes (e) between October 27, 2016 and October 27, 2017, inclusive, (f) that was not returned by the postal service.

134.     Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit F to the complaint in this action, (c) seeking to collect an alleged debt incurred for personal, family, or household purposes (d) between October 27, 2016 and October 27, 2017, inclusive, (e) that was not returned by the postal service.

135.     Class III (the "Minimum Payment Class") consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit I to the complaint in this action, (c) seeking to collect an alleged debt with creditor DNSB, incurred for personal, family, or household purposes, (d) listing an incorrect minimum payment and/or total balance amount, (e) for an alleged debt between October 27, 2016 and October 27, 2017, inclusive, (f) that was not returned by the postal service.

136.     Each class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each class.

137.     There are questions of law and fact common to the members of each of the classes, which common questions predominate over any questions that affect only individual

class members. The predominant common question is whether the respective form letters associated with each class violate the FDCPA and the WCA.

138. Plaintiffs' claims are typical of the claims of their respective class members. All are based on the same factual and legal theories.

139. Plaintiffs will fairly and adequately represent the interests of their respective class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

140. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

141. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  October 27, 2017

ADEMI & O'REILLY, LLP

By:     /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue

21

Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com